JUSTICE TRIEWEILER
dissenting.
I dissent from the majority opinion.
With no evidence from which the cause of Ana Torres’ disease can be apportioned between the time she spent at work and the time she spent in the chemistry lab as a student, the majority simply concludes that because she made a prior claim for occupational disease benefits, she is barred from now claiming that there was another equally significant or greater cause for her condition. Without so stating, the majority opinion bars Torres’ claim based on a theory of estoppel. However, estoppel has never been asserted as a defense in this case, and therefore, is not applicable. Furthermore, even if it had been pled, there is no evidence in the current state of the record which would support the elements of any form of estoppel.
The majority opinion is devoid of any recognition that there may be concurrent causes for the same injury and avoids any analysis of the Occupational Disease Act’s exclusivity provision, as applied to the facts in this case.
*91 Distilled to its essence, the majority’s conclusion is simply that, “you were paid some money before. We’re not going to let you have any more.” This may satisfy the majority’s need to punish Torres for what it construes as inconsistent positions. However, in terms of legal analysis of the issues presented to this court, the majority opinion leaves a lot to be desired.
The issue in this case is whether Torres’ claim is barred by the exclusivity provision of Montana’s Occupational Disease Act. It is important to keep in mind that what she may have believed or said on some other occasion is a different issue and is not determinative of the first issue. However, because of the majority’s preoccupation with what it concludes was Torres’ inconsistent representation on an earlier occasion, it is necessary to analyze this case on two levels.
1. Is Torres’ claim barred by the exclusivity provision of the Occupational Disease Act?
2. What is the effect of Torres’ prior claim that her disability was caused or contributed to by the conditions of her employment?

ISSUE 1

Montana’s Occupational Disease Act is found at §§ 39-72-101 to -714, MCA. The exclusive remedy provision in the Occupational Disease Act is found at § 39-72-305(1), MCA, and provides:
The right to recover compensation pursuant to the provisions of this chapter for occupational diseases sustained by an employee and arising out of and in the course of employment, whether resulting in death or not, is the exclusive remedy therefor against an employer who is properly insured under the Workers’ Compensation Act and the Occupational Disease Act of Montana.
(Emphasis added.)
Therefore, by the plain language of the Occupational Disease Act, the exclusive remedy provision only pertains to those diseases which “arise out of’ a person’s employment. Section 39-72-408, MCA, specifically states that certain diseases do not “arise out of’ employment. It states that:
Occupational diseases shall be deemed to arise out of the employment only if:
....
(4) the disease does not come from a hazard to which workmen would have been equally exposed outside of the employment....
*92 In this case, there is very little evidence. There is the affidavit of the plaintiff and an affidavit from a college administrator. However, plaintiff’s affidavit is uncontroverted to the effect that she spent at least three times as much time in Gaines Hall as a student (“outside of her employment”) as she did as a teaching assistant.
If Torres is able to prove what she alleges, and if some causal connection between chemicals and the atmosphere of Gaines Hall and her present disability can be established, then she has proven that her disease was caused by a hazard “outside of the employment,” and therefore, that it did not “arise out of’ her employment, and therefore, her claim is not barred by the exclusive remedy provision found at § 39-72-305, MCA.
The majority is very much concerned that plaintiff has previously received a portion of the disability benefits to which she would have been entitled had her disease been caused during her employment. However, an occupational disease, by definition, occurs over a prolonged period of time, and unlike an industrial injury, may be caused from conditions that existed not only in the workplace, but elsewhere. That is why the Occupational Disease Act, unlike the Workers’ Compensation Act, specifically provides for apportionment of disability benefits based on the percent of a given disease or disability that is attributable to exposure that occurs during the course of employment. Section 39-72-706(1), MCA, specifically provides in relevant part that:
[I]f disability ... from any other cause not itself compensable is aggravated, prolonged, accelerated, or in any way contributed to by an occupational disease, the compensation payable under this chapter must be reduced and limited to such proportion only of the compensation that would be payable if the occupational disease were the sole cause of the disability... as such occupational disease as a causative factor bears to all the causes of such disability ....
In other words, under the Occupational Disease Act, a claimant is entitled to recover only that portion of his or her disability benefits which represents the portion of his or her disability that arose out of employment. The Act specifically allows for an employer to disclaim liability for any portion of a person’s disability which is unrelated to employment. Therefore, based upon the previously mentioned statutes, that portion of disability would not be covered by the exclusive remedy provision found at § 39-72-305, MCA.
There are many issues to be resolved in this case. First, the fact finder needs to decide whether the plaintiff was injured by chemical *93 exposure at Gaines Hall. If so, the fact finder needs to decide what portion of exposure occurred during the course of her employment, as opposed to the time during which she was a student, and whether, based on that determination, her claim is barred by the exclusive remedy provision. However, none of these issues can be resolved consistent with the statutory framework of the Occupational Disease Act based on the uncontroverted affidavit of the plaintiff.

ISSUE 2

The statutory framework within which to decide whether the exclusive remedy provision applies is not discussed in the majority opinion. Its discussion is limited to the fact that on a previous occasion the plaintiff made a claim for occupational disease benefits based on her contention that her disability was caused or contributed to by chemical exposure during the course of her employment. The second question, then, is what is the effect of her prior claim. That issue involves two sub-questions.
First, was her prior claim inconsistent with her current claim. I agree with Justice Leaphart that it was not. Because of the nature of an occupational disease, as opposed to an industrial injury, an occupational disease can, as the Occupational Disease Act recognizes, occur over time and at more than one location. Therefore, it is not at all inconsistent with Torres’ current claim that her disease may have been contributed to during the course of her employment. Neither is it unreasonable at the outset of litigation before facts are fully developed to allege that a condition is attributable to more than one cause, and then let causation be more clearly established as a result of discovery and preparation. Ideally, the plaintiff should have been able to plead alternate claims in the same suit. However, that was not possible because of the exclusive jurisdiction of the Workers’ Compensation Court for occupational disease claims, and the fact that third-party claims have to be brought in the district court.
Furthermore, it must be kept in mind that had the State agreed that plaintiff’s occupational disease arose out of and was related to her employment, she was entitled to several times the amount of benefits she actually received. Following the logic of the majority opinion, why is the State not barred from defending this claim on the basis of her previous claim when it saved more than she received in the previous claim by denying that her disease was work related?
The second sub-question is, if Tbrres’ prior claim is deemed inconsistent with her current claim, then what is the effect of her prior claim?
*94 Judicial estoppel and statutory estoppel do not apply because her prior claim was not made as part of any judicial proceeding.
Equitable estoppel does not apply because it has not been pled, it has not been argued on appeal, and even if it had been pled and argued on appeal, there is a total absence of proof of its several elements. Furthermore, there is a substantial question about whether the State of Montana has standing to raise the defense of equitable estoppel.
At most, plaintiff’s prior claim that her disability was caused during the course of her employment is an arguably inconsistent statement which can be presented to the fact finder for consideration in combination with her current contention that the majority of her exposure occurred outside the course of her employment. Her prior claim can be used to prove the truth of what was said on the prior occasion, or may be offered for impeachment. However, it does not establish as a matter of law that what she claims at this time, even if inconsistent, is untrue. Likewise, the State Fund’s prior position that her disability was not caused by her employment is arguably inconsistent with its current position that her claim is barred by the exclusive remedy provision of the Occupational Disease Act. Both of these prior positions are simply evidence to submit to the fact finder for consideration when it resolves the issues of whether plaintiff’s disease was caused by chemicals to which she was exposed at Gaines Hall; and if so, whether her greater exposure occurred as an employee or as a student.
The majority is too preoccupied by the fact that Torres received some benefit from her settlement with the State Fund based on her contention that her disability was caused during the course of her employment. The majority, on the other hand, has no problem with the fact that the State Fund probably saved more than it paid Torres by denying that her condition was caused during the course of her employment. The majority’s concern is unjustified. Even if Torres succeeds in this claim, she would receive no double recovery. The State is entitled to an offset from any recovery received in this case for the amount paid by the State Fund pursuant to Torres’ previous claim.
For these reasons, I dissent from the majority opinion. I would reverse the summary judgment of the District Court and remand this case to the District Court for resolution of the factual issues raised by Torres’ complaint.